**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LELA CICIORA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 06-3036 |
| vs. | ) |
| | ) Judge Joan H. Lefkow |
| CCAA, Inc., d/b/a BURRITO JALISCO | ) |
| and BRIDGEVIEW BANK GROUP, | ) |
| TRUST 13137, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lela Ciciora ("Ciciora"), slipped and fell on ice and is suing the defendants, CCAA, Inc., d/b/a Burrito Jalisco ("Burrito Jalisco"), and Bridgeview Bank Group, Trust 13137 ("Bridgeview") (collectively, "defendants"), for negligence.[1] Jurisdiction is based on diversity of citizenship, as Ciciora is a citizen and resident of Indiana and the defendants are Illinois corporations. Bridgeview's L.R. 56.1(a) statement of material facts, at ¶¶ 1-3; 28 U.S.C. § 1332. Now before the court are motions for summary judgment filed by the defendants. Dkt. No. 55, Dkt. No. 59. For the following reasons, those motions will be granted.

### I.  Facts

The weather in the Chicago metropolitan area on December 13, 2005 was, not surprisingly, overcast and approximately 25 degrees Fahrenheit. Bridgeview's L.R. 56.1(a) statement of facts ("Bridgeview's statement"), at ¶ 14; Ciciora's L.R. 56.1(b) statement of facts ("Ciciora's statement"), at ¶ 6, Ex. E. There was no precipitation. *Id*. The local climatological

---

[1] Two additional defendants, named in Ciciora's first amended complaint, have been voluntarily dismissed over the course of the litigation.

data maintained by the United States Department of Commerce reflects that on the previous day, December 12, 2005, 0.06 inches of precipitation fell in the area. Ciciora's statement, at Ex. E.

Ciciora ordered lunch from Burrito Jalisco, a Mexican restaurant near where she was working at the time. Ciciora's statement, at ¶¶ 1, 2. She drove to Burrito Jalisco to pick up her order at approximately 10:30 A.M. Bridgeview's statement, at ¶ 21. Ciciora parked in the parking lot, got out of her car, and stepped up onto the sidewalk. Ciciora's statement, at ¶ 3; Bridgeview's statement, at ¶ 23.[2] Ciciora had a well-lit, unobstructed view of the sidewalk. Bridgeview's statement, at ¶¶ 17, 18. The sidewalk had been cleared of snow. Bridgeview's statement, at ¶ 10; Ciciora's statement, at ¶ 7. At 9:00 A.M., Juan Herrera, an employee of Burrito Jalisco, had, pursuant to his usual practice, salted the sidewalk in front of the restaurant. Bridgeview's statement, at ¶¶ 9, 11; Ciciora's statement, at ¶ 15. Ciciora did not see any ice on the sidewalk. Bridgeview's statement, at ¶¶ 19, 26. The sidewalk was level and not defective. Bridgeview's statement, at ¶¶ 20, 31-33.

Ciciora had taken a few steps on the sidewalk and was about twenty steps from the door to the restaurant when her left foot began to slide. Bridgeview's statement, at ¶¶ 12, 24. She slipped and fell, landing on her left leg, fracturing her foot, and striking her head on the ground. Ciciora's statement, at ¶¶ 3, 4. After she fell, she noticed an eight inch wide patch of ice on the sidewalk where she slipped. Ciciora's statement, at ¶ 3. Ciciora does not know the source of that ice. Bridgeview's statement, at ¶ 28. After her fall, Ciciora's son, Richard Ciciora, came to the scene. Ciciora's statement, at ¶ 7. Richard observed some mounds of ice on the sidewalk.

---

[2] The parking lot had been plowed but some snow remained in spots. Bridgeview's statement, at ¶¶ 15, 30.

Ciciora's statement, at ¶ 7. He described the place where his mother fell as a two to three feet wide icy area. Ciciora's statement, at ¶ 7.

Bridgeview Bank Group, Trust 13137 ("Bridgeview") is the owner of the premises where Burrito Jalisco is located. Bridgeview's statement, at ¶ 3. CCAA, Inc. operates and does business as Burrito Jalisco and leases its space from Bridgeview. Ciciora's statement, at ¶ 14. The lease obligates Bridgeview to maintain "the parking lot, driveways, and sidewalks, including snow and ice removal." Bridgeview's statement, at ¶ 8. In practice, Bridgeview hired a contractor to plow the parking lot but left shoveling and salting the sidewalk to Burrito Jalisco. Bridgeview's statement, at ¶ 9; Ciciora's statement, at ¶¶ 10, 12, 15, 21.

## II.     Summary Judgment Standard

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must look beyond the pleadings and assess the proof as presented in the record. Fed. R. Civ. P. 56(c) Advisory Committee's notes. The court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986); *Abdullahi* v. *City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

The party seeking summary judgment bears the burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Ruffin-Thompkins* v. *Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). In response, the non-moving party cannot rest on bare pleadings alone but

must use evidentiary tools to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia* v. *Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## III. Discussion

The elements of an Illinois common law negligence claim are the existence of a duty from the defendant to the plaintiff, breach of that duty, causation, and injury. *McLean* v. *Rockford Country Club*, 816 N.E.2d 403, 352 Ill. App. 3d 229 (Ill. App. Ct. 2nd Dist. 2004).[3] Property owners do not have a general duty to remove snow or ice that accumulates naturally on their premises. *Judge-Zeit* v. *General Parking Corp.*, 875 N.E.2d 1209, 1216, 214 Ill. Dec. 922 (Ill. App. Ct. 1st Dist. 2007). To avoid the effect of this "natural accumulation rule," a plaintiff must plead that the defendant caused or aggravated an unnatural accumulation of snow or ice; that he undertook to remove snow or ice and did so negligently; or that he had a contractual obligation to remove snow or ice and breached that duty. *Williams* v. *Lincoln Towers Assocs.*, 566 N.E.2d 501, 503, 207 Ill. App. 3d 913 (Ill. App. Ct. 2nd Dist. 1991). Regardless of the presence of a natural accumulation of snow or ice, however, business owners owe their patrons a duty to provide a reasonably safe means of ingress and egress (entry and exit) from their place of business. *Kittle* v. *Liss*, 439 N.E.2d 972, 974, 108 Ill. App. 3d 922 (Ill. App. Ct. 3rd Dist. 1982).

---

[3] The parties agree that Illinois law applies to this case.

Ciciora alleged in her first amended complaint that Burrito Jalisco and Bridgeview "allow[ed] an unnatural accumulation of snow and ice on the sidewalk." Complaint, at Count I, ¶ 12(e); Count IV, ¶ 10(e). In her opposition to their motions for summary judgment, however, she says that the natural accumulation standard should not apply to her case and relies instead on the exceptions to the rule.

The court will first address Ciciora's argument that Burrito Jalisco voluntarily undertook to remove the snow and ice from the sidewalk and did so negligently. The evidence that she cites in support of this argument is the following: (1) a patch of ice, between eight inches and three feet wide, existed approximately twenty steps from Burrito Jalisco's door; and (2) the last snow before her accident occurred on the previous day. Under Illinois negligence law, which has been well-developed on the subject of slip-and-falls on snow and ice, these allegations are not sufficient to survive summary judgment.

When a property owner (or, presumably, a business owner) voluntarily chooses to remove snow and ice, "he is charged with the duty of exercising ordinary care in accomplishing that task. He also has a duty to use due care in preventing an unnatural accumulation that results from his clearing operation or some design deficiency [of the premises]." *Tressler* v. *Winfield Village Coop., Inc.*, 481 N.E.2d 75, 76, 134 Ill. App. 3d 578 (Ill. App. Ct. 4th Dist. 1985). "A property owner who voluntarily undertakes the removal of snow and ice can be subjected to liability where the removal results in an unnatural accumulation of snow or ice that causes injury to a plaintiff." *Tzakis* v. *Dominick's Finer Foods, Inc.*, 826 N.E.2d 987, 992, 356 Ill. App. 3d 740 (Ill. App. Ct. 1st Dist. 2005); *see also Madeo* v. *Tri-Land Properties, Inc.*, 606 N.E.2d 701, 702, 239 Ill. App. 3d 288 (Ill. App. Ct. 2nd Dist. 1992); *Wells* v. *Great Atlantic & Pacific Tea*

*Co.*, 525 N.E.2d 1127, 1131, 171 Ill. App. 3d 1012 (Ill. App. Ct. 1st Dist. 1988); *Timmons* v. *Turski*, 430 N.E.2d 1135, 1137, 103 Ill. App. 3d 36 (Ill. App. Ct. 5th Dist. 1981).[4]

Illinois courts have recognized, however, that "the mere removal of snow leaving a natural ice formation underneath does not constitute negligence." *Tzakis*, 826 N.E.2d at 993; *see also, e.g., Wells*, 525 N.E.2d at 1131; *Timmons*, 430 N.E.2d at 1137. In order to survive summary judgment, they have required plaintiffs to produce affirmative evidence that a defendant's unreasonableness caused their injuries. *Tzakis*, 826 N.E.2d at 994 (speculation is not enough to create a genuine issue of material fact); *Madeo*, 606 N.E.2d at 705 (citation omitted) (plaintiff must "present some facts to show that the ice was unnatural or caused by defendant"); *Gilberg* v. *Toys 'R' Us, Inc.*, 467 N.E.2d 947, 949-50, 126 Ill. App. 3d 554 (Ill. App. Ct. 1st Dist. 1984) (same); *Timmons*, 430 N.E.2d at 1137 (same).

For example, in *Timmons*, the defendant, a dentist, went to work early to shovel and salt the sidewalk leading up to his building. 430 N.E.2d at 1136. The plaintiff, who had an 8 A.M. appointment, fell on a slick portion of the sidewalk and sued the defendant for negligence. *Id*. The court reversed a jury verdict for the plaintiff, explaining,

> In the case at bar there was no evidence that defendant by his conduct had created an unnatural or artificial accumulation of ice and snow where plaintiff fell. When defendant undertook voluntarily to remove the most recently fallen snow along the path upon his premises he did apparently leave a natural ice formation. To do so, however, does not constitute negligence, and there is no evidence in the record that his conduct in removing the snow was for any other reason negligent. It was essential to plaintiff's cause of action that he introduce some evidence to show that his fall resulted from an unnatural accumulation of snow and ice. He failed to do so.... Not only did the evidence fail to show that defendant caused an unnatural accumulation of snow and ice at the place where plaintiff fell, it showed

---

[4] An example of an "unnatural" accumulation would be one that resulted from some irregularity on the property, such as a defective sidewalk. *See Gilberg* v. *Toys 'R' Us, Inc.*, 467 N.E.2d 947, 949-50, 126 Ill. App. 3d 554 (Ill. App. Ct. 1st Dist. 1984) (citing cases).

> that by shoveling and scraping the snow along the path and by applying salt to it defendant exercised reasonable care in making his premises safe for use by plaintiff as well as his other patients. To hold otherwise would put defendant in the position of an absolute insurer of the safety of his business invitees, a position the law of this state prohibits.

*Id*. at 1137 (citations omitted). Similarly, in *Gilberg*, the defendant kept its parking lot clear by hiring a snow removal service. 467 N.E.2d at 950. The plaintiff did not notice any ice in the parking lot before his fall. *Id*. at 948. He fell on a one foot by two feet patch of ice that had accumulated in a depression and, after his fall, noticed that there were similar patches covering approximately three to five percent of the parking lot. *Id*. The court affirmed summary judgment for the defendant, stating,

> A finding of an unnatural or aggravated condition must be based upon an identifiable cause of the ice formation. In the present case, there is no record evidence showing the origin of the ice, cause of the depression, or defective design of the parking lot. Plaintiff need not prove his case at a summary judgment hearing; nevertheless, he must present some facts to show the origin of the ice was unnatural or caused by the defendant. Here, no facts were shown indicating that the ice patch was other than a natural accumulation. There was, therefore, no genuine, triable issue of material fact presented to the circuit court; summary judgment was properly entered.

*Id*. at 950 (citations omitted). Even in cases where the plaintiffs have adduced some evidence suggesting a possibility that the defendants' plowing operations were causally linked with the formation of ice patches, such as the placing of snow piles on a hill which then melted down to the place where the plaintiffs fell, the courts have required that such evidence be non-speculative and sufficient for a reasonable jury to find that the ice was unnatural and caused by the defendants. *See, e.g., Madeo,* 606 N.E.2d at 704 (comparing cases); *Wells*, 525 N.E.2d at 1130.

Here, it is undisputed that Juan Herrera shoveled and salted the sidewalk in front of Burrito Jalisco only an hour and a half before Ciciora's accident, which is evidence that Burrito

7

Jalisco took due care in its voluntary undertaking. Ciciora's only evidence to the contrary is the presence of a patch of ice located at least 30 feet from the entrance to the restaurant (assuming, conservatively, that each of 20 steps covers 18 inches). Ciciora has brought forth no evidence to suggest that the ice patch was anything other than a natural one that was uncovered by Burrito Jalisco's shoveling efforts.[5] Nor has she attempted to show a causal nexus between the source of the ice patch and Burrito Jalisco's actions. Richard Ciciora's opinion that the ice patch looked like it had been there for a while is speculative and not based on any concrete evidence. Furthermore, there is no other evidence that would suggest that Burrito Jalisco's clearing efforts were otherwise unreasonable, such as any information regarding how much of the sidewalk was icy versus how much ice had been removed. While Ciciora need not prove her case at the summary judgment stage, here she has not put forth any evidence on which a jury could base a finding that Burrito Jalisco acted negligently in its undertaking to voluntarily clear the sidewalk.

Second, the court will address Ciciora's argument that Bridgeview breached a duty that it contractually assumed to remove snow and ice from the sidewalks on its premises. In limited circumstances,[6] a property owner may voluntarily assume the duty to remove natural accumulations of snow and ice by contractually obligating himself to do so. *Judge-Zeit* v. *General Parking Corp.*, 875 N.E.2d 1209, 1216, 314 Ill. Dec. 922 (Ill. App. Ct. 1st Dist. 2007);

---

[5] Ciciora's vague and brief suggestion that the restaurant's awnings might have dripped water onto the sidewalk is not supported by her citation to the record and in any event is speculative.

[6] These limitations include requiring consideration of whether the contract specifically obligates the property owner to perform the duty alleged by the plaintiff, *see Judge-Zeit*, 875 N.E.2d at 1217, as well as whether the contract creates a duty between the property owner and a third party, such as a business invitee of one of its tenants. *See Tressler,* 481 N.E.2d at 77; *Eichler* v. *Plitt Theatres, Inc.*, 521 N.E.2d 1196, 1201, 167 Ill. App. 3d 685 (Ill. App. Ct. 2nd Dist. 1988). Here, the contract does specifically obligate Bridgeview to remove ice, and because the parties have assumed that this duty extended to third parties, the court will go along with that assumption for the purposes of this opinion.

*Tressler*, 481 N.E.2d at 76. A contract cannot create an absolute duty to remove every flake of snow as it falls, however. "Where the precipitation is recent or continuous, the duty to remove such obstruction as it forms cannot be imposed, and the dangers arising therefrom are viewed as the normal hazards of life, for which no owner or person in possession of property is held responsible. It is only when the owner or possessor having a duty to remove snow and ice [] improperly permits an accumulation thereof to remain after a reasonable length of time for removal has elapsed, that liability may arise for the unsafe and dangerous condition thereby created." *Schoondyke* v. *Heil, Heil, Smart & Golee, Inc.*, 411 N.E.2d 1168, 1171, 89 Ill. App. 3d 640 (Ill. App. Ct. 1st Dist. 1980) (citations omitted). Furthermore, "[t]he mere presence of snow and ice does not demonstrate negligence on the landlord's part. On the other hand, if the defendant knew or should have known of the dangerous condition and failed to take proper steps to guard against it, he can be held liable." *Tressler*, 481 N.E.2d at 77 (citation omitted). Therefore, property owners cannot be held liable for removing "all" snow and ice, but only for removal of a reasonable amount of snow within a reasonable time. *Eichler*, 521 N.E.2d at 1202.

Bridgeview undisputedly had a contractual obligation to remove snow and ice from the sidewalk in front of Burrito Jalisco and made no effort to do so. But because Burrito Jalisco voluntarily assumed Bridgeview's duty, if the sidewalks were reasonably cleared of snow, Bridgeview's breach of its duty would have no causal nexus with Ciciora's injury. Ciciora relies on the facts that "snow and ice [were] located on the Burrito Jalisco sidewalk, appeared to have been there for some time and remained in an area where customers would be likely or forced to walk to enter the restaurant." Ciciora's opposition, at 9. Again, Ciciora has not pointed to any facts that would support a finding that it was unreasonable for Burrito Jalisco or Bridgeview to

9

fail to remove the particular piece of ice on which she fell. To give this question to the jury without any such evidence would undermine the law in Illinois that the mere presence of ice or snow after a defendant has plowed is insufficient for liability.[7]

Finally, Ciciora argues that Burrito Jalisco breached its duty to provide a reasonably safe means of ingress and egress to its restaurant. This argument is not persuasive because "this duty is to properly illuminate the egress and repair or give notice of dangerous conditions on the property.... [T]his duty does not create an obligation for any property owner to *plow* their egress." *Judge-Zeit*, 875 N.E.2d at 1215. Therefore, Ciciora's argument that Burrito Jalisco breached its duty by failing to remove all ice from its sidewalks is not persuasive. While she contends in her opposition brief that Burrito Jalisco knew or should have known about the presence of the ice, *see* Ciciora's opposition, at 10, that suggestion alone is speculative and is therefore insufficient to create an issue of material fact for trial. Furthermore, *Gilberg* held that the duty to warn of a dangerous condition does not apply to scattered and unobservable ice patches, especially on a clear day. 467 N.E.2d at 950.

## IV.  Ciciora's Motion to Strike

Ciciora filed an additional response to the motion for summary judgment filed by Burrito Jalisco, asking the court to deny that motion as untimely and as non-compliant with Local Rule 56.1. The court construes this as a motion to strike. Burrito Jalisco has elected not to reply to this response or to Ciciora's substantive response to its motion for summary judgment.

---

[7] At some extreme point, the amount or location of snow or ice after a defendant has plowed may become sufficient evidence of negligence. This case, however, involving a small patch of ice located at least 30 feet from the door of the restaurant, does not rise to that level.

Burrito Jalisco was given leave in this court's order of July 26, 2007 to file a motion for summary judgment by August 9, 2007 (after its initial motion was stricken), but did not file its amended motion until August 13, 2007. The statement of facts contained within its memorandum does not show exemplary compliance with Local Rule 56.1(a)(3); however, neither does Ciciora's. Ultimately, justice is best served by addressing the legal arguments of all three parties at once. Furthermore, because the facts stated by Burrito Jalisco were also those most relevant to Bridgeview, the court is able to resolve these motions using only Bridgeview's and Ciciora's statements of facts. For these reasons, Ciciora's request to deny Burrito Jalisco's motion on the basis of untimeliness and noncompliance is denied.

V.  **Conclusion and Order**

For the foregoing reasons, the motions for summary judgment of CCAA, d/b/a Burrito Jalisco [# 59], and Bridgeview Bank Group, Trust 13137 [# 55], are granted. Judgment is entered for the defendants and this case and all pending motions in it are terminated.

DATED: December 20, 2007            ENTER:

  _____
                 JOAN HUMPHREY LEFKOW
                 UNITED STATES DISTRICT JUDGE